## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAROLD LISCHNER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UPPER DARBY TOWNSHIP and** | : | |
| **MICHAEL KEHRLE,** | : | |
| **Defendants** | : | **NO. 05-4546** |

## MEMORANDUM AND ORDER

PRATTER, J.                                                                JULY 11, 2007

Dr. Harold Lischner sued Upper Darby Township and Police Officer Michael Kehrle (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, alleging Officer Kehrle arrested him in contravention of state law and the Fourth Amendment of the federal Constitution.  The remaining issues for trial are (1) whether Officer Kehrle had probable cause to arrest Dr. Lischner; if not, (2) whether Upper Darby had a policy, practice or custom of enforcing the landowner's unlawful condition that caused Dr. Lischner's constitutional injury; or (3) whether Upper Darby failed to adequately train its police officers and such failure to train caused Dr. Lischner's constitutional injury; and, if either (2) or (3) is answered in the affirmative, (4) Dr. Lischner's damages.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2003, local supporters of President George W. Bush gathered for an event at the Drexelbrook Catering Facility, located within a privately owned residential community known as "Drexelbrook," to provide an occasion for the President to thank and speak to supporters.  It was a private, i.e., by invitation, event.  Drexelbrook did not extend any formal

invitation to the general public for the event, but it designated an outdoor space on its property for members of the public to observe the arrival of the President's motorcade.  The public was permitted to enter onto the property for this public prelude to the private event.  Prior to the event, however, Drexelbrook Associates instructed the Upper Darby Police Department that neither protesting nor the displaying of signs would be permitted on its property.

Dr. Harold Lischner, then 78 years old, was one in a group of approximately 50 members of the public gathered along the driveway on the Drexelbrook property in anticipation of the arrival of the President's motorcade.  Dr. Lischner placed a torso-sized sign on the front of his chest with a message that stated: "Withdraw our troops from Iraq.  Give the $87 billion to the Iraqi governing council and UN for immediate relief and repair of the destruction we caused." Seeing Dr. Lischner's sign, Officer Kehrle informed Dr. Lischner that no signs or demonstrators were permitted, and he would have to leave the premises if he did not remove the sign.  After Dr. Lischner repeatedly refused to remove the sign or leave the premises, Officer Kehrle placed Dr. Lischner under arrest for "Defiant Trespass."  On November 18, 2003, Dr. Lischner was found not guilty of "Disorderly Conduct," the crime with which he was eventually charged.

Dr. Lischner sued Upper Darby Township and Officer Kehrle, alleging Officer Kehrle arrested him in contravention of state law and the U.S. Constitution.  Specifically, Dr. Lischner asserts that (1) his arrest violated his rights under the Fourth and Fourteenth Amendments to the Constitution; (2) Upper Darby proximately caused this violation of his rights because it failed to properly train and supervise its law enforcement officers with respect to the legal cause required to effect an arrest and the rights of citizens to engage in political expression; and (3) the

Defendants are liable to Dr. Lischner for the torts of false arrest and false imprisonment.[1]

The parties filed cross motions for summary judgment. By Order of February 5, 2007, the Court granted summary judgment on all claims against Officer Kehrle on the ground of qualified immunity. Certain other rulings and considerations are included in the Court's Memorandum and Order of February 5, 2007. A jury trial is scheduled to begin July 23, 2007. Upper Darby poses several motions *in limine* in anticipation of trial. Those motions prompt certain discussion of trial issues for the information of the parties.

**SCOPE OF THE ISSUES FOR TRIAL**

In deciding the parties' motions for summary judgment, the Court ruled on two key issues, thus narrowing the issues for trial. First, the Court concluded that "it is undisputed that it was the affirmative 'policy' of Upper Darby on the day of the President's visit to defer to the property owner's declaration of permissible activity and arrest members of the public holding signs or otherwise 'protesting' on Drexelbrook property." (Feb. 5, 2007 Mem. & Order at 27-28.) Second, the Court ruled as a matter of law that the condition imposed by Drexelbrook and enforced by the Upper Darby Police Department on the day of the President's visit was unlawful. (Id. at 9, 14, 19.) As a result, the parties dispute (1) whether the issue of probable cause remains an issue for trial and (2) whether Dr. Lischner may argue at trial that Upper Darby had an

---

[1] Dr. Lischner earlier voluntarily dismissed his First Amendment and invasion of privacy claims against Officer Kehrle. Dr. Lischner also conceded that Pennsylvania law currently does not provide a damages remedy for violations of the Pennsylvania Constitution, Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006); Klump v. Nazareth Area Sch. Dist., 425 F. Supp. 2d 622, 641-42 (E.D. Pa. 2006), but, expressly acknowledging that he prefers to preserve his claims in the event that the Pennsylvania Supreme Court should permit such causes of action in the future, he left to this Court the dismissal of those claims on the grounds that they do not now state a cause of action upon which relief can be granted.

affirmative policy or custom that caused a violation of a constitutional right.  In addition, at oral argument, the defense also moved the Court to reconsider its denial of summary judgment with respect to the "failure-to-train" Monell claim.

**A.      Probable Cause**

In the summary judgment ruling, the Court specifically declined to decide the issue of probable cause, holding that the question of whether Officer Kehrle had probable cause to arrest Dr. Lischner (regardless of the lawfulness of the condition imposed by Drexelbrook) is a genuine issue for trial and must be left to the jury.  (See Feb. 5, 2007 Mem. & Order at 19) ("The record established thus far raises a genuine issue as to whether a reasonable police officer should have known Drexelbrook's policy was unlawful.").[2]  Nonetheless, Dr. Lischner contends that the Court necessarily resolved the probable cause issue by ruling that the condition imposed by Drexelbrook was unlawful.  Because the Court found the condition unlawful, argues Dr. Lischner, "as a matter of law, there was no probable cause that Dr. Lischner committed the crime of defiant trespass."  (Pl. Trial Mem. 6.)

As logical as Dr. Lischner's position may appear at first blush, upon closer analysis the Court concludes that this argument fails.  While it is true that the unlawful nature of the condition imposed by Drexelbrook provided Dr. Lischner with an affirmative defense and

_____

[2] See also Feb. 5, 2007 Mem. & Order at 20 ("Here, the record supports a finding by a reasonable jury that, under the instant circumstances, the illegality of the Drexelbrook policy was sufficiently well-established that a reasonable police officer would have known it was unlawful. However, a jury also could rationally find that, given the facts and circumstances known to Officer Kehrle, there was a reasonable basis for believing the condition was lawful.  Thus, probable cause remains a genuine issue for trial, and the Court declines to hold as a matter of law on this record as presently presented that Officer Kehrle had an insufficient reason to know that such a condition under such circumstances was unlawful.").

rendered him innocent of the crime of defiant trespass, "the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer *reasonably* believed that the arrestee had committed the crime." Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989) (emphasis in original); see also Barna, 42 F.3d at 819 ("The test for an arrest without probable cause is an objective one, based on the facts available to the officers at the moment of arrest."). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)).[3]  Thus, even where no crime actually has been committed, probable cause to arrest exists *if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed.*  Thus, probable cause remains a genuine issue for the jury, not withstanding the Court's holding that the condition imposed by Drexelbrook was unlawful because, in this Circuit, the latter is not inconsistent with the former.[4]

---

[3] "The validity of an arrest is determined by the law of the state where the arrest occurred." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Ker v. California, 374 U.S. 23, 37 (1963)).

[4] The Court's grant of qualified immunity to Officer Kehrle is consistent with the finding that the issue of probable cause must be left to the jury.  Since qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004), a determination that probable cause was lacking does not require a finding that the arresting officer is liable for damages, Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 1999).  (See Feb. 5, 2007 Mem. & Order at 22.)  There is undoubtably a tension between asking the jury to determine the existence of probable cause (whether a reasonable person in Officer Kehrle's position should have known the condition was unlawful) and the Court's prior holding that even if Officer Kehrle did not have probable cause to arrest Dr.

Dr. Lischner posits that "if Dr. Lischner bears the burden of proving the absence of proable cause, the Court will have the insurmountable task of instructing a jury of laypersons on the intricacies of this case law." (Pl. Trial Mem. 7.) This is not the case. While the question of probable cause is most often a question of fact for the jury, Wilson v. Russo, 212 F.3d 781, 796 (3d Cir. 2000), the legality of the condition imposed is matter of law to be decided by the Court, Radich, 886 F.2d at 1397. Here, the jury will be charged with determining not whether the condition was lawful, but whether Officer Kehrle "reasonably should have known of the facts establishing [the] affirmative defense," i.e., that the condition was unlawful. This entails an inquiry into whether Officer Kehrle was aware of the facts and circumstances that effectively rendered the condition unlawful, such as the purpose of the President's visit as part of a political campaign and the purpose for which the public was permitted to enter Drexelbrook.[5] Thus, the jury will indeed be asked to draw a very fine line given the facts in this case, but it will be asked to resolve the factual question of Officer Kehrle's knowledge of circumstances, not the legal

---

Lischner, he is entitled to qualified immunity. However, the Court based its holding in significant part on the fact that "Officer Kehrle not only confronted a situation in which probable cause was a very close call; he also had received explicit orders in advance on how to make that call." The Court thus concluded that "Officer Kehrle's choice to accept orders from his superiors in the Police Department and then reiterated by the property owner was not unreasonable and 'suggests neither that he was incompetent nor that he knowingly violated the law.'" (Feb. 5, 2007 Mem. & Order at 24-25 (quoting Paff, 204 F.2d at 437).)

[5] As the Court noted in the February 5, 2007 Memorandum and Order, "if a police officer . . . is unaware of 'how the property owner holds the property out to the public,' 'the complete nature of any hosted event,' or 'whether the property owner somehow encouraged public participation in a newspaper article,' his or her probable cause determination will be evaluated without consideration of those facts. The Court today limits its holding to the facts and circumstances presented here – facts and circumstances which fairly establish Dr. Lischner's affirmative defense and raise a genuine issue as to whether Officer Kehrle should have known that the condition sought to be imposed was unlawful." (Feb. 5, 2007 Mem. & Order at 20-21 n.15.)

question of whether the condition was unlawful, which has already been decided by the Court.

See Radich, 886 F.2d at 1396-97 (holding that "the success of appellants' claim that they were

arrested without probable cause hinges on whether a reasonable police officer, under the facts

and circumstances of this case, would know that the condition was unlawful and therefore, that

appellants had an affirmative defense to the defiant trespass statute").

**B.       Monell Claim Based on an Affirmative Policy**

Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is

liable for damages under Section 1983 when a policy, practice or custom of the municipality

causes a constitutional violation.  Id. at 691.  In order to recover from a municipality under

Section 1983, a plaintiff must "(1) identify a policy[6] or custom that deprived him or her of a

federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as

---

[6] In his Complaint, Dr. Lischner pleaded that the alleged constitutional violation by Officer Kehrle was caused by Upper Darby's "*pattern, practice and custom*" and/or "*deliberate indifference to the need for more or different training*."  (Compl. ¶¶ 34-35.)  Dr. Lischner did not expressly plead that an affirmative policy or decision on the part of the municipality caused his allegedly unlawful arrest.  Nonetheless, the law does not preclude Dr. Lischner from pursuing a policy claim even though he did not explicitly plead it in his Complaint.  Rule 15(b) of the Federal Rules of Civil Procedure provides in pertinent part that

> [w]hen issues not raised by the pleadings are tried by express or
> implied consent of the parties, they shall be treated in all respects as
> if they had been raised in the pleadings. Such amendment of the
> pleadings as may be necessary to cause them to conform to the
> evidence and to raise these issues may be made upon motion of any
> party at any time, even after judgment; but failure so to amend does
> not affect the result of the trial of these issues.

Fed. R. Civ. P. 15(b).  Thus, Dr. Lischner may produce evidence of an affirmative policy and present that claim to the jury even though he did not include such a claim in the Complaint.  Where, as here, the "policy" claim is closely linked to the pleaded "custom or practice" and "failure to train" claims, there is little risk of prejudice to the Defendant.

the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury." Startzell v. City of Philadelphia, No. 05-5287, 2007 WL 172400 (E.D. Pa. Jan. 18, 2007) (citing Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

In deciding the parties' motions for summary judgment, the Court held that "it is undisputed that it was the affirmative 'policy' of Upper Darby on the day of the President's visit to defer to the property owner's declaration of permissible activity and arrest members of the public holding signs or otherwise 'protesting' on Drexelbrook property." (Feb. 5, 2007 Mem. & Order at 27.) In addition to Upper Darby's admissions,[7] the Court based this holding on Officer Kehrle's testimony regarding his instructions for the day of the President's visit:

> Specifically I was told that there were to be no protestors or signs displayed on the private property of the Drexelbrook community. There was tape erected to keep the crowd behind a certain point.
>
> So my primary responsibility was to make sure that the crowd would stay back and there wouldn't be protestors in the area.

(Kehrle Dep. 13.) Officer Kehrle also testified that "if they [the protestors] didn't agree to leave or remove the signs we were supposed to arrest them." (Id. at 18.) With respect to its

_____

[7] Upper Darby's admissions as to the existence of a policy constitute binding judicial admissions that cannot now be contested. "Judicial admissions" are "formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). Such judicial admissions "are binding for the purpose of the case in which the admissions are made." Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972). To be binding, such admissions must be "unequivocal." County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 175 (3d Cir. 2006). The Court concludes that the Township's efforts now to suggest some ambiguity or equivocation in its early admissions are unavailing. A plain, straightforward reading of Upper Darby's admissions was sufficiently telling when the Court reviewed them in the context of the summary judgment evaluations; they remain so now.

8

admissions, Upper Darby admitted that "it enforced the policy set by 'Drexelbrook Associates'
that demonstrators could not display signs on its property," that "Sergeant Parsons instructed
Defendant Kehrle to enforce the policy of Drexelbrook Associates that demonstrators could not
display signs on its property," and that Officer Kehrle "was authorized to arrest demonstrators
displaying signs on Drexelbrook who refused to cease displaying signs, after sufficient notice,
refused to leave the private property." (Defendants' Response to Statement of Facts ¶¶ 8, 9, 10.)
The logical inference from these undisputed facts is that Upper Darby, rather than Officer Kehrle
or even Sergeant Parsons, had adopted an affirmative policy governing the Police Department's
arrest of "protestors" on Drexelbrook property during the President's visit.[8]

Upper Darby argues that the Court's determination that an affirmative policy existed is at
odds with the prevailing case law because the existence of an affirmative policy, by definition,
requires the identification of a decision-maker with final decision-making authority, which is "a
question of law for the court to decide, not a matter of fact to be submitted to the jury." Andrews
v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (holding that an affirmative
municipal policy is made when a decision-maker who possesses final authority to establish
municipal policy issues an official proclamation, policy, or edict). To survive summary
judgment, the plaintiff must provide factual and statutory support that the official identified
possesses final policymaking authority. Hock v. County of Bucks, 2005 WL 3488726, at *2

---

[8] Dr. Lischner also argues that during oral argument on the summary judgment motions,
defense counsel "confirmed" that it was Upper Darby Township, as opposed to any individual
within the Upper Darby Police Department, that made the determination as to how Drexelbrook's
policies regarding signs and protesting would be enforced on the day of the President's visit.
See Hrg. Tr. 7/20/06 (Doc. No. 20) at 6 (defense counsel's statements that "what had happened is
the Township had set up space for protestors off the community").

(E.D. Pa. Dec. 16, 2005).  Likewise, a plaintiff asserting a municipal custom theory must show that a policymaker acquiesced in the alleged custom.  Andrews, 895 F.2d at 1480.

Here, although Dr. Lischner failed to identify by name a specific decision-maker with "final decisionmaking authority," it is undeniable that *someone* made the decision for the police to enforce the Drexelbrook "no protesting" policy.  From Officer Kehrle's testimony, it is clear that he did not make the decision independently to arrest "protesters" or persons with signs, but, not surprisingly, he was unaware of the origin of the instruction.  (See Kehrle Dep. 17-18.)  He certainly knew it emanated from his superiors inasmuch as Officer Kehrle explained that the directive was communicated to him by Sergeant Parsons.

Given that the event in question involved the President of the United States coming to their community, it is inconceivable that the highest levels of decision-makers both in the Upper Darby Police Department and in the Township itself were ignorant of the security considerations and procedures in place with respect to protesters, crowd containment, traffic management and the like.  Indeed, even at this late juncture on the eve of trial, the defense has made no attempt to suggest the existence of any evidence to the contrary, much less made any application to the Court to present any such contradictory evidence.  While the logical inferences from both Upper Darby's admissions and the uncontested testimony of Officer Kehrle demonstrate the existence of an affirmative policy, the record is devoid of evidence suggesting that decision-makers with final authority played no part in the affirmative decision to enforce Drexelbrook's "no protesting" policy or that the municipality had elected to leave such matters to the discretion of each police officer.

Despite Dr. Lischner's failure to document a specific directive by an individual with final

decision-making authority, the evidence in the record is sufficient to indisputably establish that it was the affirmative policy of Upper Darby on the day of the President's visit to enforce Drexelbrook's "no-protesting" policy.  See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (holding there was sufficient evidence that the procedure was a policy or custom of the County's despite the absence of an official decision by an individual with final decision-making authority).  Thus, the Court declines to revise its prior holding except to acknowledge that while the existence of an affirmative policy is most certainly *indisputable* on the record here, it may not have been *undisputed*.  Therefore, it is the law of the case that an affirmative policy on the part of Upper Darby existed.[9]  The issue of whether such policy, or whether a practice, custom or failure to train, *caused* Dr. Lischner's alleged injury remains for the jury to decide.

**C.      Monell Claim Based on Failure to Train**

The Court denies the defense motion to reconsider its holding with respect to Dr. Lischner's failure-to-train claim.  "[I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.  The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice."  Berg, 219 F.3d at 276.  The present case falls within this narrow category, and the evidence in the record is sufficient for the failure-to-train claim to go to the jury.

---

[9] See United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 397-98 (3d Cir. 2003) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication.").

In sum, the remaining issues to be decided by the jury are (1) whether Officer Kehrle had probable cause to arrest Dr. Lischner; if not,[10] (2) whether Upper Darby had a policy, practice or custom of enforcing the landowner's unlawful condition that caused[11] Dr. Lischner's constitutional injury; or (3) whether Upper Darby failed to adequately train its police officers and such failure to train caused Dr. Lischner's constitutional injury; and, if either (2) or (3) is answered in the affirmative, (4) Dr. Lischner's damages.[12]

**DEFENSE MOTIONS *IN LIMINE***

**1.      Motion to Preclude References to the First Amendment (Doc. No. 32)**

Upper Darby moves to preclude Dr. Lischner and his counsel from (1) mentioning the First Amendment during the trial; (2) asserting and/or suggesting at trial that Upper Darby and/or any member of the Upper Darby Police Department violated any right guaranteed by the First Amendment; and/or (3) asserting and/or suggesting that Dr. Lischner is entitled to damages for any right guaranteed by the First Amendment.  The Motion is grounded on the fact that although Dr. Lischner voluntarily withdrew his First Amendment claim, he stated in his Pre-Trial

---

[10] If a police officer inflicted no constitutional injury on the plaintiff, it is "inconceivable" that municipal defendants could be liable under Section 1983.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

[11] Upon proof of the existence of a "constitutional policy, practice, or custom, the plaintiff can establish causation by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its obvious consequences."  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 580 (3d Cir. 2004).  Once the plaintiff has made the necessary showing, and so long as the causal link is "not too tenuous," the question "whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." A.M., 372 F.3d at 581.

[12] Dr. Lischner seeks damages for physical and emotional pain and suffering, the deprivation of his liberty, and the violation of his constitutional right to free expression.

Memorandum that he is entitled to damages for violation of his "constitutional right to free expression."  (Pl. Pre-Trial Mem. 4.)  Dr. Lischner responds that the First Amendment – and everything it stands for – is essential to the proof of Dr. Lischner's damages because Dr. Lischner will testify as to the great value he places on the freedom of expression and political speech.  For the reasons discussed below, the Motion is granted in part and denied in part.

While it is true that Dr. Lischner has alleged only a violation of his rights under the *Fourth Amendment*, which does not protect the right to freedom of expression, the right to free expression is nonetheless the background (and backbone) of this case.  This is because the right to free expression protected by the Pennsylvania Constitution gives rise to Dr. Lischner's affirmative defense to offense of defiant trespass.  Thus, the concept of "free speech," or "freedom of expression," is relevant because the fact that Drexelbrook's condition was unlawful makes it more likely that Officer Kehrle did not have probable cause to arrest Dr. Lischner.  (Because the condition was unlawful, Dr. Lischner had an affirmative defense to the offense of defiant trespass and police officers are charged with taking such affirmative defenses into account in determining whether a crime is being committed.  See Estate of Dietrich v. Burrows, 167 F.3d 1007, 1010-12 (6th Cir. 1999) (citing Carroll v. United States, 267 U.S. 132, 162 (1925)).)

The Court's ruling that Drexelbrook's condition was unlawful is based on the Pennsylvania Supreme Court's decision in Tate, which was premised on the Pennsylvania Constitution, not the First Amendment of the United States Constitution.  Therefore, the First Amendment *per se* is not relevant to either the affirmative defense or to Dr. Lischner's damages, as Dr. Lischner has withdrawn his federal First Amendment claim, and a plaintiff cannot seek

monetary damages for violations of the Pennsylvania Constitution.  Klump v. Nazareth Area Sch. Dist., 425 F. Supp. 2d 622, 641-42 (E.D. Pa. 2006) (citing Jones v. City of Philadelphia, 890 A.2d 1188, 1216 (Pa. Commw. 2006)).  Dr. Lischner may only seek damages for the alleged violations of his rights under the Fourth Amendment.

Thus, the Court must preclude Dr. Lischner from asserting that Upper Darby or any member of the Upper Darby Police Department "violated" Dr. Lischner's "*First Amendment rights*" or claim damages for the "*violation of his constitutional right to free expression.*" However, as Dr. Lischner points out, the terms "First Amendment" and "free speech" are frequently used in common parlance to refer to constitutionally protected political expression. To the extent Dr. Lischner or his counsel mention "free speech" or the "First Amendment" and their personal importance to Dr. Lischner[13], such references are permissible.  The Court will be explaining to the jury the appropriate lines of demarcation in this regard and will expect counsel and the parties to respect those lines as well.  Accordingly, the Motion (Doc. No. 32) is granted in part and denied in part.

**2.     Motion to Preclude Identification of President George W. Bush (Doc. No. 33) and Motion to Preclude Reference to the Content of Dr. Lischner's Sign and Political Affiliation / Anti-war Beliefs (Doc. No. 38)**

In two separate but related motions, Upper Darby moves to preclude reference to the identity of President Bush and any evidence of the message on Dr. Lischner's sign and/or his

---

[13] In civil rights cases, the plaintiff is entitled to seek damages for mental and emotional harms, including emotional distress and humiliation.  Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986).  Although damages may not be awarded on the "value" or "importance" of constitutional rights, id., damages may be awarded for harm suffered as a result of the deprivation of a constitutional right.  See Pica v. Sarno, 907 F. Supp. 795, 803 (D.N.J. 1995) (citing Stachura, 477 U.S. at 307; Spence v. Bd. of Educ., 806 F.2d 1198, 1200-01 (3d Cir. 1986)).

14

political, humanitarian or religious affiliations and beliefs (including, but not limited to any

pacifist and/or anti-war affiliations and beliefs).  As Dr. Lischner puts it, Upper Darby

"apparently envisions a presentation during Dr. Lischner's case limited to testimony that Dr.

Lischner was displaying an unspecified sign in opposition to an unspecified political candidate."

(Pl. Trial Mem. 9.)  Both Motions will be denied.

Upper Darby asserts that the identity of President Bush and Dr. Lischner's message and

beliefs have no relevance to the probable cause and Monell issues because Dr. Lischer's

political affiliations and beliefs played no role in the decision to arrest him.[14]  Alternatively,

Upper Darby contends that any probative value of the President's identity and Dr. Lischner's

affiliations and beliefs is substantially outweighed by the danger of unfair prejudice to Upper

Darby.  Upper Darby grounds this contention on the allegation that President Bush's public

approval ratings have dropped according to news accounts, particularly with respect to the

military activities in Iraq, and public opinion of the war itself has also declined.[15]  For this

reason, argues Upper Darby, revealing the President's identity and/or the message on Dr.

Lischner's sign presents the risk that the jury will favor Dr. Lischner because of his social and/or

political ideologies.  Instead, Upper Darby requests that Dr. Lischner be permitted to testify only

that "he displayed a sign in opposition of a 'presidential candidate.'"

The Court disagrees that what Upper Darby proposes is a viable approach; it is certainly

not mandated by the rules of evidence or notions of fairness for trials.  The identity of the

---

[14] Indeed, Officer Kehrle testified that the message on Dr. Lischner's sign was unclear to him.  (See Kehrle Dep. 36.)  There is no evidence or allegation on the record to the contrary.

[15] Upper Darby cites various polls and news articles in support of these contentions.

political candidate speaking at Drexelbrook and the circumstances surrounding the visit (i.e., the commencement of the war in Iraq and a presidential campaign), as well as the relatively innocuous nature of the message on Dr. Lischner's sign are relevant to the determination of probable cause and to the adequacy of Upper Darby's training and policies.  "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  All relevant evidence is generally admissible, except as otherwise provided by law, and evidence which is not relevant is not admissible.  Fed. R. Evid. 402.

The President's identity and Dr. Lischner's opposition to the war in Iraq – presumably as evidenced by the text on his sign – are relevant because they are part of the circumstances weighing on the probable cause analysis conducted by Officer Kehrle.  All the specific facts and circumstances surrounding this event play into the legality of the condition imposed, and thus figure into the existence of Dr. Lischner's affirmative defense which, in turn, relates to Officer Kehrle's probable cause determination.  Thus, the facts that the political candidate was not only a candidate for arguably the most important office in our Government, but also the *current* President participating in a campaign for reelection, were important to the Court's determination that the condition imposed by Drexelbrook was illegal and, thus, relevant to the probable cause determination.  Likewise, the fact that Dr. Lischner's sign was not blatantly offensive or disrespectful, and certainly not aimed at inciting violence or some other physical disruption, is relevant to whether probable cause existed.  See Commonwealth v. Tate, 432 A.2d 1382, 1387 (Pa. 1981) (noting that the private property provided a forum for "the Director of the

F.B.I., then a controversial public figure" and evaluating the right of expression "in light of the compatibility of that expression with *the activity of the particular place at the particular time*") (emphasis supplied).

Upper Darby contends that even if relevant, the probative value of the identity of the President and the textual upshot of Dr. Lischner's sign and his beliefs is substantially outweighed by the danger of unfair prejudice.  Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

This argument also fails.  In the Third Circuit there is a "strong presumption" that relevant evidence should be admitted.  Forrest v. Beloit Corp., 424 F.3d 344, 355 (3d Cir.2005); see also DeLuca v. Merrell Dow  Pharmaceuticals, Inc., 911 F.2d 941, 956 (3d Cir.1990) (noting a "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact" embodied in the Federal Rules of Evidence).  Thus, the prejudice against which the law guards is *unfair* prejudice, that is, "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found. . . . Prejudice does not simply mean damage to the opponent's cause.  If it did, most relevant evidence would be deemed prejudicial."  Ansell v. Green Acres Contr. Co., 347 F.3d 515, 525 (3d Cir. 2003) (quoting Wagenmann v. Adams, 829 F.2d 196, 217 (1st Cir. 1987)).

Moreover, as both the Supreme Court and the Court of Appeals for the Third Circuit

17

have recognized, "[a] trial is more than a matter of presenting a series of individual fact

questions in arid fashion to a jury.  The jury properly weighs fact questions in the context of a

coherent picture of the way the world works.  A verdict is not merely the sum of individual

findings, but the assembly of those findings into that picture of the truth."  <u>In re Diet Drugs</u>

<u>Products Liability Litigation</u>, 369 F.3d 293, 314 (3d Cir. 2004); <u>see also</u> <u>Old Chief v. United</u>

<u>States</u>, 519 U.S. 172, 187 (1997).  In <u>Old Chief</u>, the Supreme Court explained that

> [u]nlike an abstract premise, whose force depends on going precisely
> to a particular step in a course of reasoning, a piece of evidence may
> address any number of separate elements, striking hard just because
> it shows so much as once . . . .  Evidence thus has force beyond any
> linear scheme of reasoning, and as its pieces come together a
> narrative gains momentum, with power not only to support
> conclusions but to sustain the willingness of jurors to draw the
> inferences, whatever they may be, necessary to reach an honest
> verdict.  This persuasive power of the concrete and particular is often
> essential to the capacity of jurors to satisfy the obligations that the
> law places on them.

<u>Old Chief</u>, 519 U.S. at 187.  Thus, "[u]nduly sterilizing a party's trial presentation can unfairly

hamper her ability to shape a compelling and coherent exposition of the facts.  <u>In re Diet Drugs</u>,

369 F.3d at 314.  With respect to criminal prosecutions, the Supreme Court noted that "[a]

syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust

evidence that would be used to prove it.  People who hear a story interrupted by gaps of

abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous

decision on the story's truth can feel put upon at being asked to take responsibility knowing that

more could be said than they have heard. " <u>Id.</u> at 189.

   Here, the probative and narrative value of the details is not substantially outweighed by

the risk of unfair prejudice.  There is no requirement that trials be made up of the blandest

18

theories, facts and arguments available.  By the same token, as the Court expressed to counsel

during oral argument, trials are not stages set for sensationalism, and the Court intends to guard

against this trial becoming a platform for public polemics.  Prejudices of the sort that would

unduly influence the jury theoretically will be a primary focus of, and addressed during, the voir

dire process.  See United States v. Giese, 597 F.2d 1170 (9th Cir. 1979) (where criminal

defendant's violent activities committed in protest of the Vietnam War "might have inflamed

the passions of at least several prospective jurors" it was "essential for the trial judge . . . to

examine prospective jurors' attitudes toward [the defendant] and the views he represented").  If

needed, cautionary instruction may be requested during the trial.  Thus, the Motions (Doc. Nos.

33 and 38) are denied.

3.      **Motion to Preclude Introduction of Statements by District Justice (Doc. No. 34)**

Upper Darby moves to preclude Dr. Lischner and his counsel from introducing evidence

and/or otherwise mentioning alleged statements by District Justice Michael Cullen.[16]  Upper

Darby agrees to stipulate that Dr. Lischner was acquitted of Disorderly Conduct and

acknowledges that Dr. Lischner may testify to that effect.

Dr. Lischner agrees that the evidentiary limits proposed by Upper Darby on this issue of

District Justice Cullen are appropriate and will limit the presentation of evidence accordingly.

Thus, the Motion (Doc. No. 34) will be granted as unopposed.

4.      **Motion to Exclude Evidence of Damages Incurred After Release (Doc. No. 35)**

Upper Darby moves to preclude Dr. Lischner or his counsel from introducing evidence

---

[16] Officer Kehrle testified that D.J. Cullen remarked that anywhere the President goes is
public property.  (Kehrle Dep. 37.)

and/or mentioning any type of damages, economic or otherwise, that were incurred after Dr.

Lischner was released by Officer Kehrle.  Upper Darby's analysis on this point is that Dr.

Lischner has made a claim only for false arrest and false imprisonment, not malicious

prosecution.  A claim for false arrest or imprisonment provides for damages "up until issuance

of process or arraignment, but not more."  Heck v. Humphrey, 512 U.S. 477, 484 (1994).  Thus,

a claim for false arrest alone does not permit damages for any harm alleged to have occurred

after issuance of summons or arraignment.  Hector v. Watt, 325 F.3d 154, 156 (3d Cir. 2001).

Dr. Lischner agrees that the evidentiary limits proposed by Upper Darby are appropriate

and will limit the presentation of evidence accordingly.  Dr. Lischner notes, however, that he

should nonetheless be permitted to testify concerning consequential damages arising from the

unlawful arrest and his physical and emotional pain and suffering that extended beyond the

issuance of legal process.

The Court will grant in part and deny in part the Motion.  Dr. Lischner may not present

evidence of any new or additional injury suffered as a result of any events that occurred *after* the

issuance of process.  However, Dr. Lischner *may* present evidence of any injury he suffered as a

result or consequence of the events that occurred *before* the issuance of process, namely, his

arrest and imprisonment, even if the impact of such injury continued after the issuance of

process.

**5.     Motion to Preclude Evidence or Assertions of a Policy or Custom (Doc. No. 36)**

Upper Darby presents this Motion with respect to the scope of the issues remaining for

trial.  For the reasons previously discussed, the Motion will be denied.  (See discussion *supra* at

pp. 7-11.)

**6.      Motion to Exclude Dr. Lischner's Curriculum Vitae (Doc. No. 37)**

Upper Darby moves to preclude Dr. Lischner from admitting into evidence and/or

referring to Dr. Lischner's curriculum vitae at trial on the grounds that it is hearsay and not

relevant.  The Motion will be granted, but with the express qualification that Dr. Lischner will

be permitted to testify as to any relevant information concerning his personal and/or professional

background which may or may not be contained in his curriculum vitae.

**CONCLUSION**

To reiterate, the remaining issues to be decided by the jury are (1) whether Officer

Kehrle had probable cause to arrest Dr. Lischner; if not, (2) whether Upper Darby had a policy,

practice or custom of enforcing the landowner's unlawful condition that caused Dr. Lischner's

constitutional injury; or (3) whether Upper Darby failed to adequately train its police officers

and such failure to train caused Dr. Lischner's constitutional injury; and, if either (2) or (3) is

answered in the affirmative, (4) Dr. Lischner's damages.  Upper Darby's motions *in limine* will

be granted or denied as specified in this Memorandum and in the Order that follows.


BY THE COURT:


_____          S/Gene E.K. Pratter    _____
                                GENE E.K. PRATTER
                                UNITED STATES DISTRICT JUDGE


21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD LISCHNER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UPPER DARBY TOWNSHIP and** | : | |
| **MICHAEL KEHRLE,** | : | |
| **Defendants** | : | **NO. 05-4546** |

## ORDER

AND NOW, this 11th day of July, 2007, upon consideration of the defense motions *in limine* (Doc. Nos. 32-38), and the Plaintiff's responses thereto (Doc. No. 41), it is hereby ORDERED that:

1. The Motion to Preclude References to the First Amendment (Doc. No. 32) is GRANTED IN PART AND DENIED IN PART.  Dr. Lischner and his counsel are precluded from seeking any damages resulting from any alleged "violation of the First Amendment" or "violation of the constitutional right to freedom of expression," but are permitted to otherwise mention or reference the First Amendment, "free speech," or "freedom of expression" as outlined in the accompanying Memorandum.

2. The Motion to Preclude Identification of President George W. Bush (Doc. No. 33) is DENIED.

3. The Motion to Preclude Introduction of Statements by District Justice (Doc. No. 34) is GRANTED.

4. The Motion to Exclude Evidence of Damages Incurred After Release (Doc. No. 35) is GRANTED IN PART AND DENIED IN PART as explained in the Memorandum

accompanying this Order.

      5. The Motion to Preclude Evidence or Assertions of a Policy or Custom (Doc. No. 36)

is DENIED.

      6. The Motion to Exclude Dr. Lischner's Curriculum Vitae (Doc. No. 37) is GRANTED.

      7. The Motion to Preclude Reference to the Content of Dr. Lischner's Sign and Political

Affiliation / Anti-war Beliefs (Doc. No. 38) is DENIED.


                                                                            BY THE COURT:



                                      S/Gene E.K. Pratter
_____
                                      GENE E.K. PRATTER
                                      UNITED STATES DISTRICT JUDGE